823 A.2d 651

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Frank A.K. AWUAH.**

**Misc. AG No. 3, Sept. Term, 2002.**

Court of Appeals of Maryland.

May 9, 2003.

506

Melvin Hirshman, Bar Counsel, James P. Botluk, Asst. Bar Counsel, for petitioner.

Frank A.K. Awuah, Jessup, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, J.

The Respondent, Frank A.K. Awuah (hereinafter "Awuah" or "Respondent") was admitted to the Bar of this Court on June 28, 1990. On July 29, 1997 this Court indefinitely suspended Respondent with the right to apply for reinstatement after sixty days, as a result of his failure to maintain proper trust accounts, commingling client funds with his own and failing to keep proper records regarding the handling of the monies. *Attorney Grievance Comm'n v. Awuah*, 346 Md. 420, 697 A.2d 446 (1997).[1] On February 12, 1999, this Court extended the suspension upon Joint Petition of Bar Counsel and Awuah with the right to apply for reinstatement after thirty days.[2]

On January 10, 2002, the Attorney Grievance Commission of Maryland (hereinafter "Bar Counsel"), acting pursuant to Maryland Rules 16–707 and 16–709(a),[3] filed a petition for

1. The suspension was to become effective 30 days thereafter. *Awuah*, 346 Md. at 436, 697 A.2d at 454. The identical sanction, a sixty-day suspension, was imposed upon the Respondent by the District of Columbia Court of Appeals on September 16, 1999. *In re Berger*, 737 A.2d 1033 (D.C.1999).

2. On June 29, 2000, the District of Columbia Court of Appeals extended the original sixty-day suspension by an additional thirty days. *In re Awuah*, 754 A.2d 948 (D.C.2000).

3. Rule 16–707 authorizes the Review Board to direct the filing of charges and Rule 16–709(a) provides that, "Charges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review

disciplinary action against Awuah charging numerous violations of the Maryland Rules of Professional Conduct (hereinafter "MRPC"), including MRPC 1.1 (Competence),[4] MRPC 1.3 (Diligence),[5] MRPC 1.5 (Fees),[6] MRPC 5.5 (Unauthorized

---

Board." This case arose and was processed under the attorney grievance rules in effect on June 30, 2001, as they were stated in the 2001 edition of the Maryland Rules pursuant to our order adopting the new Attorney Grievance Rules, in which we specifically "ORDERED ... [T]hat any matter pending before an Inquiry Panel, the Review Board, or the Court of Appeals pursuant to charges, a petition, or an application pending as of June 30, 2001 shall continue to be governed by the Rules in effect on June 30, 2001;" Md. Rules Orders, p. 56, Maryland Rules of Procedure, vol.1 (2002).

4. MRPC 1.1 provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

5. MRPC 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

6. Rule 1.5 provides:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. (b) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation. (c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. The terms of a contingent fee agreement shall be communicated to the client in writing. The communication shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a

Practice of Law),[7] MRPC 8.4(b),(c) & (d) (Misconduct).[8]

The charges involved complaints of Paul Brobbey, Boukari Tare, and Michael Grady. On March 18, 2002, this Court referred the petition to The Honorable Diane O. Leasure of the Circuit Court for Howard County for a hearing to determine findings of fact and conclusions of law pursuant to Maryland Rule 16–709.

Judge Leasure scheduled a hearing for June 11, 2002. Prior to the hearing, Awuah filed a motion to dismiss in which he alleged that he had not participated in the proceedings before the Inquiry Panel and the Review Board. Bar Counsel responded that he had sent correspondence regarding those

contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of its determination. (d) A lawyer shall not enter into an arrangement for, charge, or collect: (1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or custody of a child or upon the amount of alimony or support or property settlement, or upon the amount of an award pursuant to Sections 8–201 through 213 of Family Law Article, Annotated Code of Maryland; or (2) a contingent fee for representing a defendant in a criminal matter. (e) A division of fee between lawyers who are not in the same firm may be made only if: (1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation; (2) the client is advised of and does not object to the participation of all the lawyers involved; and (3) the total fee is reasonable.

7. Rule 5.5 provides: A lawyer shall not: (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or (b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.

8. MRPC 8.4 provides in relevant part:
It is professional misconduct for a lawyer to:

＊　　　＊　　　＊

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice.

proceedings to Awuah's office address, which had been maintained by the Client Security Trust Fund (now the Client Protection Fund). Judge Leasure denied the motion to dismiss and, by consent of the parties, proceeded to hold three hearings in the matter, on June 11, 2002, August 28, 2002 and November 8, 2002, to permit witnesses to be located.

Judge Leasure, on December 23, 2002, entered the following findings of fact and conclusions of law:

"For the reasons set forth herein, the court finds, by clear and convincing evidence, that the Respondent violated Rule 1.1 regarding his representation of Mr. Brobbey; Rule 1.3 regarding his representations of Ms. Okusaga and Mr. Brobbey; Rule 5.5 regarding his representation of Mr. Brobbey, Mr. Ouedraogo and Ms. Okusaga; and Rule 8.4(b), (c), and (d) regarding his representations of Ms. Okusaga, Mr. Brobbey and Mr. Ouedraogo. The court further finds that the evidence was insufficient to establish a violation of Rule 1.5.

### Background

"The Respondent was admitted to the Bar of the Court of Appeals of Maryland on June 28, 1990. He was also admitted to practice law in the District of Columbia. He has been indefinitely suspended from the practice of law in Maryland since August 28, 1997. In September 1999, he was suspended by the Bar of the District of Columbia Court of Appeals.

"The several complaints filed against the Respondent are related to his handling of immigration matters for or on behalf of the complainants. At all relevant times, the Respondent's sole law office was located in Silver Spring, Maryland. His office was initially located on the fifth floor of the building and was later moved to the sixth floor. It is undisputed that subsequent to his suspension in Maryland, the Respondent continued to see clients in his Silver Spring office and continued to use his legal letterhead. The Respondent testified at the hearing that once he found out that

his District of Columbia suspension was not as yet in effect, he continued to work from his Silver Spring office as a District of Columbia (not Maryland) attorney.

### The Complaints

"I. Complaint of Paul Brobbey.

"Mr. Brobbey was out of the country and unavailable to testify at the hearing. A copy of the transcript of his testimony before the inquiry panel was submitted as an exhibit (Petitioner's Exhibit # 11) in this case.

"According to the testimony and evidence presented at the inquiry panel hearing, the Respondent represented Mr. Brobbey from July 1996 through July 2000. The Respondent submitted an application for an I–30 immigration status on Mr. Brobbey's behalf, which was rejected. Mr. Brobbey testified that he called the Respondent upon learning of the denial and stated that it took the Respondent three days to return his call.

"In June 2000, Mr. Brobbey met with the Respondent at his [Respondent's] office in Silver Spring, Maryland. The Respondent thereafter filed an untimely motion and/or appeal concerning the I–30 application denial.

"Mr. Brobbey was ultimately incarcerated and placed on a schedule to be deported. The Respondent visited him in prison, and told him that there was nothing he could do for him and that his only choice was to sign the deportation letter and wait to be deported. While Mr. Brobbey was in prison, his sister told him that she had learned that the Respondent had been disbarred [sic, suspended].

"Mr. Brobbey testified that during the course of the representation, the Respondent never returned his calls and when he did (typically a week to a couple of weeks later), he 'never had anything to say' to him. He said the problem got worse when the Respondent moved his office from the fifth floor to the sixth floor. Mr. Brobbey testified that the Respondent held himself out as an attorney and never told him that his license to practice law had been suspended.

"Mr. Brobbey claims to have paid the Respondent between $6,000.00 and $8,000.00 for legal services and alleges that the Respondent did little or nothing on his behalf. Although Mr. Brobbey's sister was able to obtain his file from the Respondent, he claims entitlement to a refund of the fees he paid to the Respondent for the representation.

"In November 2000, Mr. Brobbey retained new counsel who filed a motion to reopen his case; this motion was granted.

"II.   Complaint of Boukari Tare.

"The Respondent was retained in September 1999 to file an H1B visa application on behalf of Boureima Ouedraogo. The only witness to testify regarding the allegations in this complaint was the Respondent.

"The Respondent testified that Mr. Ouedraogo was educated in a foreign country; therefore, his transcripts and credentials had to be translated from French.  He stated that it became apparent that Mr. Ouedraogo could not produce all the documents that were needed.  Despite this fact, the Respondent filed the visa application on March 17, 2000.  Thereafter, he was unable to get in touch with Mr. Ouedraogo.  The Respondent testified that he stopped working on the case in (approximately) September 2000 because he was unable to get in touch with Mr. Ouedraogo.

"According to the Respondent, a refund for the $1,250.00 paid on behalf of Mr. Ouedraogo by his employer had been made as of the date the complaint was filed with the AGC. The Petitioner (during closing arguments at the hearing) conceded that it did not have proof that all monies paid by the employer had not been refunded and submitted on this issue.

"III.   Complaint of Michael Grady, Esq.

"Adijat Toke Okusaga testified that she met the Respondent in 1992 and that he was introduced to her as an immigration lawyer.   In March 1993, she retained the Respondent to represent her in obtaining her green card.   He was apparently successful in getting her a temporary permit, but told her that it would take five to six years to obtain an

immigration visa. The Respondent told her that he would notify her when her priority date was getting close.

"Ms. Okusaga testified regarding the initial fee arrangement she had with the Respondent. The parties agreed upon a fee of (approximately) $1,500.00 to be paid in monthly installments of $50.00.

"In June 2000, Ms. Okusaga went to the Respondent's office in Silver Spring. At that time he told her that her priority date was close and that he needed an additional payment. She paid the Respondent another $1,000.00, with the understanding that the balance of the fees would be paid at a later date. She also wanted her husband to be included in her application for which the Respondent charged her an additional $750.00. At that time, the Respondent gave her a list of requirements as it related to her priority date. "Ms. Okusaga stated that she obtained all the required documentation (results of medical examination, four years of tax returns, $345.00 check for INS, etc.) and delivered it to the Respondent's office in June 2000. At that time, she picked up one of the Respondent's business cards that identified him as an attorney and gave his Silver Spring, Maryland office address, although it reflected his old suite number. When asked about his move from the fifth to the sixth floor, the Respondent told her that 'business was not moving well' and that he was 'downsizing.'

"Ms. Okusaga testified that the Respondent represented her until July 5, 2000. She further testified that when she did not hear from the Respondent for two to three months and her phone calls to him were not returned, another attorney told her that the Respondent had been disbarred [sic, suspended]. Based upon that information, Ms. Okusaga wrote a letter to the Respondent on October 21, 2000 terminating his services as her attorney. She never received a response to this letter. Testimony adduced at the hearing established that Ms. Okusaga considered the Respondent to be her attorney up until the time she terminated his services. She retained another attorney and, to date, has not received her file from the Respondent as requested.

"Michael J. Grady, Esq. testified that he had his first consultation with Ms. Okusaga on December 6, 2000. He was retained to recover the legal fees Ms. Okusaga paid the Respondent and to obtain her file. After making about six telephone calls (during December 2000 and early January 2001) to the Respondent, leaving messages, and not having the calls returned, Mr. Grady filed the instant complaint with bar counsel.

"The Respondent testified that as of June 2000, Ms. Okusaga owed him $2,500.00. He stated that she wrote him a check for $1,000 .00 in June 2000 with the understanding that this payment would be applied against the balance due and owing. He told her that there would be an additional $500.00 fee if she wanted him to continue with the case as well as an additional $750.00 fee to include her husband in the application.

"According to the Respondent, Ms. Okusaga was told that she needed a letter from her employer verifying her employment. Ms. Okusaga gave him a letter from her employer indicating that she was no longer in that person's employ. The Respondent told her that the letter was insufficient and that, as a result, her application could not be filed.

*Discussion*

"I.   Rule 1.1 Competence.

"The Petitioner asserts that the Respondent violated MRPC by noting an untimely appeal on behalf of Mr. Brobbey. The decision of the immigration judge denying the Respondent's request that the matter be reopened was mailed on July 22, 1999. This transmittal informed the parties that an appeal must be filed within 30 calendar days of the mailing of the written decision. The Motion to Reopen and Reconsider was stamped received by the immigration office on August 25, 1999, more than 30 days after the time by which any appeal was to be filed. The evidence adduced at the hearing clearly established that said motion and/or appeal were not filed in a timely manner.

"Rule 1.1 provides that a lawyer shall provide competent representation to a client. This rule further provides that competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

"The Court finds, by clear and convincing evidence, that the Respondent violated MRPC 1.1 by his failure to file a timely motion and/or appeal on Mr. Brobbey's behalf. The Court further finds, by clear and convincing evidence, that the Respondent's suggestion that Mr. Brobbey consent to deportation was not competent advice or in his client's best interest. Fortunately for Mr. Brobbey, his new counsel has been successful in having his case reopened.

"II.   Rule 1.3 Diligence.

"Rule 1.3 requires that a lawyer act with reasonable diligence and promptness in representing a client. The Petitioner claims that the Respondent violated this rule by not handling matters for which he had been retained in a reasonably diligent fashion.

"The testimony and evidence adduced at the hearing clearly and convincingly established that the Respondent did little work on Ms. Okusaga's case and that he was not diligent in responding to her requests for information about the status of her case. Additionally, despite repeated attempts by Ms. Okusaga and her counsel (Mr. Grady), her file remains in the Respondent's possession. Accordingly, the Court finds, by clear and convincing evidence, that the Respondent violated Rule 1.3 in his representation of Ms. Okusaga.

"The Court further finds, by clear and convincing evidence, that the Respondent violated Rule 1.3 by failing to file a timely motion and/or appeal on behalf of Mr. Brobbey.

"As to the services the Respondent provided on behalf of Mr. Ouedraogo, the Court finds that the evidence was insufficient to establish a violation of Rule 1.3.

"III.   Rule 1.5 Fees.

"Rule 1.5 provides that a lawyer's fee shall be reasonable and sets forth the various factors that should be considered

in determining whether a fee for services is reasonable. These factors include the following: (i) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (ii) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (iii) the fee customarily charged in the locality for similar legal services; (iv) the amount involved and the results obtained; (v) the time limitations imposed by the client or by the circumstances; (vi) the nature and length of the professional relationship with the client; (vii) the experience, reputation, and ability of the lawyer performing the services; and (viii) whether the fee is fixed or contingent.

"The Petitioner asserts that the Respondent violated this rule by charging Mr. Brobbey $6,000.00 in fees and providing little of no value for the fees charged.

"No testimony or evidence was presented regarding fees customarily charged in the locality for similar legal services or as to the novelty or difficulty of the questions involved. Furthermore, no credible testimony or evidence was presented regarding the actual amount billed to and paid by Mr. Brobbey.

"Considering the factors individually and collectively, the Court finds that the evidence is insufficient to find a violation of Rule 1.5 regarding the Respondent's representation of Mr. Brobbey.

"The Court finds that the testimony and evidence adduced at the hearing regarding fees billed to and paid by Ms. Okusaga and on behalf of Mr. Ouedraogo was insufficient to establish a violation of Rule 1.5.

"IV.   Rule 5.5 Unauthorized Practice of Law.

"Rule 5.5(a) provides that a lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.

"The Petitioner alleges that the Respondent engaged in the unauthorized practice of law by keeping his sole law office,

located in Maryland, open after he had been suspended from the practice of law in Maryland. There is no dispute that the Respondent was suspended in Maryland as of August 28, 1997 and that he was suspended from the practice of law in the District of Columbia in September 1999. It is also undisputed that he continued to provide legal representation to or on behalf of (i) Mr. Brobbey until July 2000; (ii) Mr. Ouedraogo until (at least) March 17, 2000; and (iii) Ms. Okusaga until July 5, 2000. These representations continued after his suspension from the practice of law in both jurisdictions.

"Based upon the testimony and evidence presented, and all reasonable inferences and conclusions which can be drawn therefrom, the Court finds, by clear and convincing evidence, that the Respondent violated Rule 5.5 with respect to his representation of Mr. Brobbey, Mr. Ouedraogo and Ms. Okusaga.

"The Court does not find the Respondent's statements that he was working out of his Silver Spring, Maryland as a District of Columbia, and not Maryland, attorney to be persuasive. The Respondent continued to use his legal letterhead and business cards, neither of which contained any notice that his privilege to practice law in the State of Maryland had been suspended. Given the fact that his sole law office is located within this State, it would be reasonable for any person to assume that he was still licensed to practice law in Maryland. It is undisputed that none of the complainants were aware that the Respondent had been suspended from the practice of law in Maryland until they were so informed by someone other than the Respondent.

"V. Rule 8.4 Misconduct.

"Rule 8.4 provides, *inter alia,* that it is professional misconduct for a lawyer to (i) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (ii) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; or (iii) engage in conduct that is prejudicial to the administration of justice.

"The Petitioner asserts that the Respondent violated Rule 8.4(b) due to the fact that § 10–601 of the Business Occupations and Professions Article of the Annotated Code of Maryland makes it a misdemeanor to practice law without a license. The Respondent did not deny that he was engaged in the practice of law; he testified that he was operating out of the Silver Spring, Maryland office as a District of Columbia lawyer, not as a member of the Maryland Bar. The Court finds, by clear and convincing evidence, that the Respondent violated Rule 8.4(b) by continuing to practice law in the State of Maryland after his suspension in Maryland.

"The Petitioner additionally asserts that the Respondent violated Rule 8.4(c) which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. The Petitioner's specific complaints are that the Respondent held himself out as an attorney after he had been suspended and by falsely representing that he had filed a petition on behalf of Mr. Ouedraogo. As to the latter allegation, the only testimony was that of the Respondent who testified that the application had been filed. Accordingly, the Court finds that the evidence did not establish any facts to the contrary. The Court does find, by clear and convincing evidence, that the Respondent held himself out as an attorney after he had been suspended in Maryland and that, as a result, he violated Rule 8.4(c).

"The Petitioner also alleges Rule 8.4(d), which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice. The Court finds, by clear and convincing evidence, that the Respondent violated Rule 8.4(d) by continuing to practice law during the time his privilege to do so in Maryland had been suspended."

Bar Counsel presented no exceptions to Judge Leasure's findings of fact and conclusions of law and, as a sanction for Awuah's conduct, recommended disbarment. Awuah argued before this Court and in his filed exceptions that the "issues at hand here were all immigration related issues and the trial court did not really have an understanding of the issues

involved and, therefore, could not make the right conclusions." He also posits that Bar Counsel, "if interested in seeking the truth through a fair trial would have provided an expert for the court." He also iterates that he did not intentionally violate the terms of his suspensions from practice because he believed he could practice as a "D.C. Attorney" and was practicing only immigration law. Because Awuah's exceptions are without merit, and because his conduct clearly demonstrates that he is unfit to practice law in this state, we shall disbar him.

## I. Standard of Review

This Court exercises " 'original and complete jurisdiction for attorney disciplinary proceedings in Maryland,' " and conducts " 'an independent review of the record.' " *Attorney Grievance Comm'n v. Blum*, 373 Md. 275, 293, 818 A.2d 219, 230 (2003) (quoting *Attorney Grievance Comm'n v. McLaughlin*, 372 Md. 467, 492, 813 A.2d 1145, 1160 (2002) (citations omitted)). In conducting that review, we accept the hearing judge's findings of fact as *prima facie* correct unless shown to be " 'clearly erroneous,' " and we give due regard to the hearing judge's opportunity to assess the credibility of witnesses. *Attorney Grievance Comm'n v. Wallace*, 368 Md. 277, 288, 793 A.2d 535, 542 (2002)(quoting *Attorney Grievance v. Garland*, 345 Md. at 392, 692 A.2d at 468) (citation omitted). "As to the hearing judge's conclusions of law," however, " 'our consideration is essentially *de novo*.' " *Attorney Grievance Comm'n v. Dunietz*, 368 Md. 419, 428, 795 A.2d 706, 711 (2002) (quoting *Attorney Grievance Comm'n v. Thompson*, 367 Md. 315, 322, 786 A.2d 763, 768 (2001) (quoting *Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554, 562, 745 A.2d 1037, 1041 (2000))).

## II. Discussion

### A. *Awuah's Exceptions*

Awuah claims that the trial court did not understand immigration law and that Bar Counsel did not provide an

expert to assist the trial judge. The detailed findings of fact, which are *prima facie* correct, not to be disturbed unless clearly erroneous, *Blum,* 373 Md. at 293, 818 A.2d at 230 (citing *Wallace,* 368 Md. 277, 793 A.2d 535), entered by the trial judge in the record, refute Awuah's contention, and were he to have wished to present any expert to the court, he could have under Md. Rule 5–702. A trial judge is presumed to know the law. *See Ball v. State,* 347 Md. 156, 206, 699 A.2d 1170, 1194 (1997); *see also Medical Mutual v. Evans,* 330 Md. 1, 34, 622 A.2d 103, 119 (1993) (stating that judges "are also presumed to know the law and lawfully and correctly to apply it") (citing *Smith v. State,* 306 Md. 1, 8, 506 A.2d 1165, 1168 (1986)). The trial judge clearly understood the law and the situation with which she was dealing.

Second, Awuah alleges that he acted without intent when he practiced law in Maryland because he was licensed in the District of Columbia and he only practiced immigration law. The findings of fact clearly refute this contention.

Respondent was suspended in Maryland as of July of 1997, effective August 28, 1997, and in the District of Columbia on September 16, 1999. He represented Mr. Brobbey until July of 2000, Mr. Ouedraogo during 2000 and Mrs. Okusaga during 2000.

Awuah also continued to use his legal letterhead and business cards, upon which there was no mention of his privilege to practice having been suspended in Maryland nor that his practice was limited solely to immigration law. It is undisputed that Respondent did not have an office in the District of Columbia; Awuah practiced law in Maryland where he maintained his only office—his protestations to the contrary are unavailing. *See Attorney Grievance Comm'n v. Harris–Smith,* 356 Md. 72, 737 A.2d 567 (1999). The business card of Respondent, introduced in evidence through Mrs. Okusaga as having been received in 2000, includes a line "•Auto Accidents • Immigration • Divorce • Criminal Defense," reflecting a broader practice.

### B. *Rule 1.1 Violation*

■ The trial judge found by clear and convincing evidence that Awuah violated Rule 1.1 regarding his representation of Mr. Brobbey because Respondent filed an untimely appeal or motion to reopen and reconsider for Mr. Brobbey and because he incompetently counseled Mr. Brobbey to consent to deportation.

Rule 1.1 requires competent representation, including legal knowledge, skill, thoroughness and reasonable preparation, be rendered to a client. Respondent violated Rule 1.1 when he failed to file the requisite appeal and/or motion to reconsider within the time period, which reflected a lack of skill and thoroughness. This behavior was exacerbated by his inadequate counseling of Mr. Brobbey to consent to deportation. *See e.g. In re Spraker,* 744 N.E.2d 415, 416 (2001)(stating that attorney failed to provide competent representation in violation of Rule 1.1 of the Indiana Rules of Professional Conduct, which is the same as Maryland's Rule 1.1, when he, among other things, did not file a timely appeal).

### C. *Rule 1.3 Violation*

■ The hearing judge found by clear and convincing evidence that Respondent violated Rule 1.3 not only for the inadequate representation of Mr. Brobbey but also because he did little work on Ms. Okusaga's case, was not responsive to her status requests, and did not return Ms. Okusaga's file to either her or to her attorney. Certainly, Respondent did not act diligently with respect to Mr. Brobbey's deportation, nor did he with respect to Ms. Okusaga's application for a green card and in returning her file to her or her representative, a situation which continued, at least through the fact-finding process herein. *See Attorney Grievance Comm'n v. Dunietz,* 368 Md. 419, 425, 795 A.2d 706, 709 (2002)(sustaining hearing judge's conclusion that failure "to file the appropriate documents ... demonstrat[ed] a lack of diligence")(alteration in original).

### D. *Rule 1.5 Violation*

The hearing judge found that the evidence was insufficient to establish a violation of Rule 1.5. Petitioner did not file any exceptions to the ruling and we sustain the hearing judge's findings in this regard.

### E. *Rules 5.5(a) and 8.4(b)(c) and (d)*

██ The hearing judge found that the Respondent had violated Rules 5.5(a) and 8.4(b), (c) and (d), which are the gravamen of this matter. The bases for the findings were that the Respondent, although he had been suspended from the practice of law in Maryland effective on August 28, 1997, and also in the District of Columbia on September 16, 1999, continued to practice law from his law office located in Maryland and to provide legal representation on behalf of Mr. Brobbey, until July of 2000, Mr. Ouedraogo until, at least, March 17, 2000 and Ms. Okusaga until July 5, 2000. Respondent failed to give notice to any of these clients that he had been suspended from the practice of law in Maryland by any word or deed.

As we admonished in *Attorney Grievance Comm'n v. Brennan*, 350 Md. 489, 501, 714 A.2d 157, 163 (1998), so we iterate again:

> This court takes its role as the promulgator and guardian of proper standards for the practice of law seriously. Lawyers are not suspended or disbarred capriciously, for less than compelling reasons. When they are suspended or disbarred, they may not practice law except under the limited circumstances noted in *Hallmon, supra.*[9]

Although Awuah claims he only was practicing immigration law, he failed to notify his clients that he was suspended from the practice of law in Maryland when all indicia associated with his practice would have led to the conclusion that he was

---

**9.** *Attorney Grievance Comm'n v. Hallmon,* 343 Md. 390, 681 A.2d 510 (1996). In *Hallmon,* we discussed the necessity of close supervision of a disbarred or suspended attorney by a practicing attorney to avoid the unauthorized practice of law.

authorized to practice law in Maryland. As such, Awuah violated Rule 5.5(a), as well as Rule 8.4(b), (c) and (d).

Awuah's violation of Rule 8.4(b) is premised upon his violation of the strictures of Maryland Code, Sections 10–601 [10] and 10–602 [11] of the Business Occupations and Professions Article (1989, 2000 Repl.Vol.). *Attorney Grievance Comm'n v. Barneys,* 370 Md. 566, 570, 805 A.2d 1040, 1042 (2002). Awuah is guilty of professional misconduct because he portrayed himself as an attorney after he had been suspended in Maryland and continued to practice law in Maryland while under suspension. *Attorney Grievance Comm'n v. Johnson,* 363 Md. 598, 770 A.2d 130 (2001).

### III. Sanction

■ Awuah recommends that he not be sanctioned further, while Bar Counsel recommends that the appropriate sanction in this matter is disbarment. We agree with Bar Counsel.

In a recent opinion of this court, that of *Attorney Grievance Comm'n v. Barneys,* 370 Md. 566, 805 A.2d 1040 (2002), authored by Judge Harrell, he explored the continuum of cases in which sanctions were imposed for the unauthorized

---

10. Section 10–601 states:

(a) *In general.*—Except as otherwise provided by law, a person may not practice, attempt to practice, or offer to practice law in the State unless admitted to the Bar.

(b) *Activities of lawyers on disciplinary status.*—While an individual is on inactive status or disbarred or while the individual's right to practice law is suspended or revoked, the individual may:

(1) discharge existing obligations;

(2) collect and distribute accounts receivable; or

(3) perform any other act that is necessary to conclude the affairs of a law practice but that does not constitute practicing law.

(c) *No defense to act through lawyer.*—It is not a defense to a charge of a violation of this section that the defendant acted through an officer, director, partner, trustee, agent, or employee who is a lawyer.

11. Rule 10–602 states:

Unless authorized by law to practice law in the State, a person may not represent to the public, by use of a title, including "lawyer", "attorney at law", or "counselor at law", by description of services, methods, or procedures, or otherwise, that the person is authorized to practice law in the State.

practice of law. Judge Harrell noted that in five recent cases, the attorney was disbarred. *See Attorney Grievance Comm'n v. Johnson*, 363 Md. 598, 770 A.2d 130 (2001); *Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554, 745 A.2d 1037 (2000); *Attorney Grievance Comm'n v. Harper*, 356 Md. 53, 737 A.2d 557 (1999); *Attorney Grievance Comm'n v. James*, 355 Md. 465, 735 A.2d 1027 (1999); *Attorney Grievance Comm'n v. Kennedy*, 319 Md. 110, 570 A.2d 1243 (1990), while in one, *Attorney Grievance Comm'n v. Harris–Smith*, 356 Md. 72, 737 A.2d 567 (1999), the attorney was given a 30 day suspension. In two of the five cases in which disbarment was ordered, the attorney was not only found to have been in violation of Rule 5.5(a) but also in violation of Rule 8.4, while *Harris–Smith* was not. Significantly, in *Barneys*, disbarment was ordered when Rule 8.4(b)(c) and (d) violations were sustained, 370 Md. at 592, 805 A.2d at 1054–55, as in the present matter.

With respect to the other three cases cited in *Barneys*, those of *Briscoe, James* and *Kennedy*, the respondent in this case shares the "deliberate and persistent" misconduct that applied to the attorneys in those cases who also violated MRPC 5.5(b), "directly and without valid excuse or justification." *Barneys*, 370 Md. at 591–92, 805 A.2d at 1054. Like James, who had been suspended, Briscoe, who had been decertified, and Kennedy, who eventually consented to disbarment after having been enjoined from the practice of law in Maryland, Awuah disregarded an order of the court and its prohibition against practice.

Unlike Harris–Smith, who successfully posited a "federal overlay" to avoid disbarment, Awuah's averment that he only practiced immigration law is contradicted in the record by Ms. Okusaga who testified that she had a business card of Awuah's in 2000 upon which there is a line which reads "● Auto Accidents ● Immigration ● Divorce ● Criminal Defense."

Finally, were Awuah to prevail in his allegation that he could practice only immigration law when he was not authorized to practice law in either Maryland or the District of

Columbia after September 16, 1999, we then would be permitting a suspended attorney to practice without any of the protections required in *Hallmon, supra.*

Consideration of the purposes of sanctions, especially in the absence of mitigation, mandates disbarment. Those purposes are:

> to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession. *See Attorney Grievance Comm'n of Maryland v. Hess,* 352 Md. 438, 453, 722 A.2d 905, 913 (1999) (quoting *Attorney Grievance Comm'n of Maryland v. Webster,* 348 Md. 662, 678, 705 A.2d 1135, 1143 (1998)). We have stated that "[t]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n of Maryland v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). Therefore, the appropriate sanction depends upon the facts and circumstances of each particular case, including consideration of any mitigating factors. *See Attorney Grievance Comm'n of Maryland v. Atkinson,* 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000); *Attorney Grievance Comm'n of Maryland v. Gavin,* 350 Md. 176, 197–98, 711 A.2d 193, 204 (1998).

*Attorney Grievance Comm'n v. Blum,* 373 Md. at 303, 818 A.2d at 236.

As a result, in order to protect the public, deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct and to maintain the integrity of the legal profession, Awuah must be disbarred.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE*

*ATTORNEY GRIEVANCE COMMISSION AGAINST FRANK A.K. AWUAH.*

BELL, C.J., concurs in result only.